**UDDEHOLM CORPORATION, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 84–11–01599.**

United States Court of
International Trade.

Dec. 31, 1987.

Shearman & Sterling, Donald L. Cuneo, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Sheila N. Ziff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

RESTANI, Judge:

### Facts

Before the court for review is the determination of the International Trade Administration of the United States of America (ITA), finding dumping margins on stainless steel plate imported by plaintiff from Sweden. 49 Fed.Reg. 39,885 (Oct. 11, 1984). This determination upon annual review found margins of 6.21% for the period June 1980 through May 1981 and 4.46% for the period June 1981 through May 1982. The previous review for the period January through May 1980 resulted in a finding of no margin. 47 Fed.Reg. 41,151 (Sep. 17, 1982).

Uddeholm, the plaintiff, sells steel plate in the United States from inventory and keeps no records of the date of exportation. Because the law in effect during the relevant time period required that United States price be compared to foreign market price at the time of exportation, *see* 19 U.S.C. § 1677b (1982), the review required selection of a specific amount of time to be used as an adjustment back to time of exportation. The time selected was time in inventory—nine months. Thus, Commerce required data on home market sales in Sweden for the period September 1979 to August 1981.

In the previous annual review proceeding, as it had in past years, Uddeholm's Swedish affiliate (Nyby) supplied the foreign sales data in the form of price lists, discount information by customer and volume totals by customer. Nyby's response to ITA's questionnaire in this case with regard to home market sales was to provide the data in essentially the same form as it did previously.[1]

On March 21, 1983, ITA asked Nyby for more specific sale by sale data. For the period January 1980 forward, the requested information was supplied. For the latter part of 1979, Nyby did not submit the data requested, as it had not been preserved on computer tape.

In its preliminary decision for the relevant period, ITA declined to accept Nyby's information for the four month period at issue. Finding the submission of Nyby incomplete for the period June 1, 1980, to May 31, 1981, ITA used data of a third party, citing the "best information available" rule. 19 U.S.C. § 1677e(b) (1982).[2] The data it used was the highest margin for the period.[3]

---

1. The court views the home market sales data for the latter part of 1979, which was incorporated by reference in documents in the agreed record, to be part of the administrative record. ITA did not object to incorporation by reference; it objected to the form of the information.

2. For the final year of the review ITA did not resort to "best information available."

3. Plaintiff seems to argue that rather than using the third party's margin, Uddeholm's U.S. sales data could be compared to the third party's home market sales. Such a procedure could yield a margin which was closer to reality. This approach was not raised below and in all likelihood ITA would have discretion to reject it because Nyby and Uddeholm are affiliated or because utilization of such a method would be burdensome. *Cf. Ceramica Regiomontana, S.A.*

### Arguments

Plaintiff argues, in essence, that ITA abused its discretion. It claims that Nyby acted reasonably in not storing the requested information on computer tape when compilation of the data in another form had already been accepted and relied on by ITA in an earlier proceeding, and that ITA is unreasonably punishing it for not being prescient enough to expect ITA's methodological change. ITA responds that it is required by law to use only sale by sale data which includes invoice reference and other detail and that when such information is not provided, for whatever reason, ITA must totally disregard the information provided by respondent.

### Discussion

■ ITA's argument is overstated. It relies on 19 U.S.C. § 1675(a)(2)(A) (1982) which refers to the foreign market value of each entry in comparison to the United States price of each entry. ITA argues that the language referring to "each entry" requires it to obtain data reflecting each specific sale with appropriate invoice data. The statute does not compel use of a precise type of sale by sale data. Merchandise sold in the home market is not the subject of "entry." Rather, a margin reflecting home market sales is applied to each entry. Calculation of a margin is not an exact science. Whatever margin is applied in determining the duty to be assessed on a specific entry is simply an approximation to be utilized over a period of time. ITA may calculate the margin in whatever reasonable way it deems best. Here it decided to change a methodology which it had previously used with regard to Nyby. Its new requirement as to Nyby was for sales data in a more usable form and in accordance with its requirements in other cases. This was not unreasonable. Nyby recognized this and supplied the information requested for 1980 forward.

■ Where a respondent in an investigation does not cooperate fully, ITA is to disregard information submitted by the party for the relevant period and use information, pursuant to § 1677e(b), which may actually be less accurate, if it is the best information otherwise available. *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1560 (Fed.Cir.1984); *Pistachio Group v. United States*, 11 CIT ——, 671 F.Supp. 31, 39–40 (1987). In order to comprehend section 1677e(b), it would appear appropriate to examine the whole provision.[4] There are two parts of 19 U.S.C. § 1677e. The first part, subsection (a), refers to unverifiable information. The thrust of that section would seem to be that if a respondent's information is not verifiable, ITA must use the best information which is verifiable, from any source. ITA does not cite this section. Apparently, it believes it could verify (perhaps with difficulty) Nyby's information, even though that information is not the complete information which it sought. There is no reference in section 1677e(a) to cooperation of the parties, hindrance of the proceedings, etc.

*v. United States*, 10 CIT ——, 636 F.Supp. 961, 967–68 (1986) *aff'd* 810 F.2d 1137 (Fed.Cir. 1987).

4. The provision read, during the relevant period, as follows:

§ 1677e. **Verification of information**
(a) **General rule**
Except with respect to information the verification of which is waived under section 1673b(b)(2) of this title, the administering authority shall verify all information relied upon in making a final determination in an investigation. In publishing such a determination, the administering authority shall report the methods and procedures used to verify such information. If the administering au-

thority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its determination, which may include the information submitted in support of the petition.
(b) **Determinations to be made on best information available**
In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.
19 U.S.C. § 1677e (1982).

Section 1677e(b) has a quite different focus. Verifiability is not the key; hindrance of the proceedings is. Section 1677e(b) does not require in express terms that ITA assess intent before it rejects information. Furthermore, the statute does not require that in every case ITA must assess the reasonableness of a parties' action in failing to provide information before proceeding to use the "best information otherwise available" in place of the missing data. Reading such a requirement into the statute would in all likelihood severely delay a process, the timely completion of which is already difficult.

■ The next question is are there any situations in which ITA *may* use information even if it is not that which it originally requested. Logic dictates that ITA must have such discretion, otherwise it could never change its requests in a particular case if convinced that other information would serve its needs better. Although the *Atlantic* court noted that the agency "must" use the best information available when a party is "unable" to respond, it did not discuss whether the agency may change its form requirements to *enable* respondents to comply with its requests. The key issue is whether ITA acts reasonably in making its requests, changing them, or declining to change them. Because ITA has the discretion to change its requests, it had discretion to accept Nyby's 1979 data or to reject the information if utilization of such data would impede its processes.

The question next arises as to whether the court should remand this matter to give ITA the opportunity to make this decision, as both parties have argued that ITA did not exercise any discretion.[5] The court finds such action is not necessary. Despite counsels' arguments the court believes ITA did exercise its discretion and did so properly.

■ There seems to be agreement that ITA's requirements here were not different from those in other cases, they were only different from the approach taken by this plaintiff over the years, which had been accepted in one earlier review. As indicated, ITA may change its methods and requirements; the only limitation is that it act reasonably in accordance with law. The record reflects that ITA had difficulty in using the information in the form provided. *See* Administrative Record Documents (A.R.) 38 and 46.[6] ITA could insist on data in a more usable form. Plaintiff argues that *Matsushita Electric Industrial Co. v. United States*, 10 CIT ——, 645 F.Supp. 939 (1986), *rev'd on other grounds*, 823 F.2d 505 (Fed.Cir.1987) indicates such changes may not be made after the review period if a party has reasonably relied on an earlier request for a particular form of data. What is reasonable reliance and what is a reasonable change will vary from case to case. Here, the information was only a few years old when requested. There is no allegation that the basic data did not exist, only that the computerized records did not exist in the proper form. The problem seems to be that it would cost respondent too much to comply. ITA had only completed one review using the data in the form submitted by plaintiff, apparently with some difficulty. The record reveals considerable give and take between ITA and the respondent. It does not reflect an arbitrary approach, nor does it reflect a belief by ITA that it was statutorily prohibited from altering its request. ITA exercised discretion and based on this record the court cannot find abuse of discretion by ITA.[7] Having properly declined

---

5. Counsel for defendant argues it could not do so because of a statutory prohibition. Counsel for plaintiff argues it did not do so.

6. A.R. 36 might lead one to believe that the only difficulty was with the form of U.S. sales data. The record seems to indicate a broader problem which encompasses home market sales data.

7. There is a sub-issue as to whether ITA should have used the 1980 information because it was in the proper form, and limit its rejection to the 1979 data. There is no requirement that ITA adopt such a procedure for data within one review year. ITA's action seems well within its discretion and in keeping with past practice.

to alter its request, ITA proceeded to use the best information available. Accordingly, ITA's determination is sustained.

**JUDGMENT**

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED: that this action is dismissed.