MANIFATTURA EMMEPI
S.p.A., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 90–06–00275.

United States Court of
International Trade.

July 20, 1992.

Siegel, Mandell & Davidson, P.C., Brian S. Goldstein and David Newman, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Civ. Div., Velta A. Melnbrencis, and Counsel for Import Admin., U.S. Dept. of Commerce, D. Michael Kaye, Washington, D.C., of counsel, for defendant.

## OPINION & ORDER

AQUILINO, Judge:

In this action, the plaintiff has interposed a motion for judgment upon the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Final Results of Antidumping Duty Administrative Review; Spun Acrylic Yarn From Italy,* 55 Fed. Reg. 18,925 (May 7, 1990), accompanied by a form of order postulating, among other things, that the determination "is unlawful and of no effect". The gravamen of the motion is that it was not in accordance with law for the ITA to have refused to accept questionnaire responses and to have relied in lieu thereof on a ten-year-old cash deposit rate as best information otherwise available.

Jurisdiction of the court is pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).

### I

Shortly after publication of the Treasury Department's *Spun Acrylic Yarn From Italy; Antidumping Withholding of Appraisement Notice and Determination of Sales at Less Than Fair Value,* 44 Fed. Reg. 75,547 (Dec. 20, 1979), the Trade Agreements Act of 1979 transferred responsibility for antidumping and countervailing duties to the ITA, which published an antidumping-duty order based on the foregoing determination at 45 Fed.Reg. 23,684 (April 8, 1980).

The plaintiff was not party to Treasury's investigation. It began exporting spun acrylic yarn from Italy to the United States in 1986, at which time the cash-deposit rate for exporters not involved in prior proceedings was 4.92 percent. In May 1988, the ITA published notice of initiation of an administrative review of its order for the period April 1, 1987 to March 31, 1988. In a letter to the agency on June 24, 1988, Emmepi acknowledged receipt of a questionnaire and requested an extension of time to respond until 15 days after the results of the ITA's review of the preceding period April 1986–March 1987 were made available. In a follow-up letter, counsel indicated that the requested extension would make responses due on August 15th. *See* Record Document ("R.Doc") 8. Another letter requested 15 additional days, or until August 30th. *See* R.Doc 15. On August 24, 1988, the ITA granted a 15–day extension but warned that "[a]ny undue delays or lack of response w[ould] result in [its] proceeding with appraisements based on the best information available." R.Doc 17. No date was specified then by the agency, although in the final results at bar the ITA states it to have been September 8, 1988. *See* 55 Fed.Reg. at 18,926.

The claim now is that the agency did not receive responses to its questionnaire for the 1987–88 review period or any other communication from Emmepi during the next seven months. Defendant's Memo-

randum, pp. 5–6. On its part, the plaintiff contends that on September 1, 1988 it requested another extension to file responses. *See* Plaintiff's Memorandum, p. 7. The plaintiff also refers to letters dated September 30th and March 20, 1989 stating that responses had not yet been filed because it was still awaiting the results of the 1986–87 review. *See* R.Doc 84. The September 30 letter claimed that Emmepi had been advised that those results would be available within a few months, but 14 had gone by and the company still had not learned of them. The ITA was requested to

(1) expedite the dissemination of the results of the review, (2) exclude Manifattura Emmepi, S.p.A. pursuant to 19 C.F.R. 353.45 from any determination, (3) revoke any and all Antidumping Duty Findings or Orders with respect to [it] pursuant to 19 C.F.R. 353.54(b) and (4) cease to include [it] in any further administrative reviews.

*Id.* The March 1989 follow-up letter again requested the results of the 1986–87 review and represented that "millions of dollars of business [we]re being lost … as a result of … inability to quote prices [as to] whether additional duty w[ould] be payable and, if levied, at what rate." The letter requested a meeting to discuss the matter.

One took place on April 5, 1989 at which questionnaire responses for 1987–88 were finally submitted. The ITA rejected them as untimely. On April 25, 1989, the agency published *Spun Acrylic Yarn From Italy: Preliminary Results of Antidumping Duty Administrative Review* for 1986–87, 54 Fed.Reg. 17,803, and on October 13, 1989 the final results for that period were published, confirming the zero percent margin for Emmepi in the preliminary determination.[1]

On December 29, 1989, the preliminary determination for the subsequent review periods, April 1, 1987 to March 31, 1988 and April 1, 1988 to March 31, 1989[2], was published in which Emmepi's dumping margin was set at 48.05 percent *ad valorem* based on best information available. The company requested that the ITA reconsider and modify the determination based on its questionnaire responses. *See* R.Doc 84. The agency's response was publication on May 7, 1990 of the final results now at issue. They confirmed the 48.05% margin for Emmepi as well as for two other firms, one which no longer existed and one which had supplied inadequate questionnaire responses. The ITA confirmed that it used the cash deposit rate published in 1980 as best information available and stated that it had not considered Emmepi's responses to the questionnaire because they were untimely, notwithstanding grant of an extension.

The plaintiff now argues that the ITA's equation of the 1980 rate with best information available was "completely unjustifiable and unreasonable", deviated from agency practice, violated the Administrative Procedure Act and injured plaintiff's right to due process. In addition, the plaintiff claims the ITA neglected to consider whether its merchandise should be excluded from the scope of the antidumping-duty order.

## II

The defendant counters that the plaintiff did not exhaust administrative remedies on these issues and that this court therefore should not address them. Defendant's Memorandum, pp. 12–14. Among other points, the plaintiff replies that the defendant has waived any right to press this position, which has not been pleaded as an affirmative defense.

CIT Rule 8(d), which is analogous to Rule 8(c) of the Federal Rules of Civil Procedure, requires a party to plead its affirmative defenses. The Court of International Trade has held that failure to do

---

**1.** *See Spun Acrylic Yarn From Italy; Final Results of Anti-dumping Duty Administrative Review,* 54 Fed.Reg. 42,005, corrected, 54 Fed.Reg. 45,891 (Oct. 31, 1989).

**2.** After initiation in May 1988 of the administrative review for 1987–88 and before its completion, a similar review for the next year commenced. The record now indicates that Emmepi did not export subject merchandise during that 1988–89 period.

so results in waiver of such defenses and their exclusion from an action. *See, e.g., United States v. Atkinson,* 6 CIT 257, 259, 575 F.Supp. 791, 793 (1983), and cases cited therein. *See also Hall v. U.S. Postal Service,* 857 F.2d 1073 (6th Cir.1988); *Little v. United States,* 794 F.2d 484, 487 n. 2 (9th Cir.1986) ("exhaustion of administrative remedies ... must be pleaded in the trial court"). In fact, in this action the defendant had more than one opportunity to so plead; plaintiff's complaint was amended twice, and the defendant interposed two answers. Since neither includes as an affirmative defense the point sought to be pressed now, it cannot foreclose consideration of plaintiff's motion.[3]

### III

■ With regard to the issue of best information available, the record shows that the agency was lax in disposing of the requests for extensions of time, but this did not amount to license not to respond to the questionnaire or to justification of submission some seven months after the deadline. When information requested for an administrative review is not forthcoming, the government will rely on best information otherwise available. The Trade Agreements Act states that, in

> making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(c). Section 1677f(e) provides that data

> shall be submitted to the administering authority or the Commission during the course of a proceeding on a timely basis

and shall be subject to comment by other parties within such reasonable time as the administering authority or the Commission shall provide. If information is submitted without an adequate opportunity for other parties to comment thereon, the administering authority or the Commission may return the information to the party submitting it and not consider it.

■ This statute has been enforced by the ITA and upheld in court. *See, e.g., Zenith Electronics Corp. v. United States,* 14 CIT ——, ——, 755 F.Supp. 397, 414 (1990); *Seattle Marine Fishing Supply Co. v. United States,* 12 CIT 60, 68–71, 679 F.Supp. 1119, 1126–28 (1988), *aff'd,* 883 F.2d 1027 (Fed.Cir.1989); *Ansaldo Componenti, S.p.A. v. United States,* 10 CIT 28, 36–37, 628 F.Supp. 198, 204–05 (1986), citing *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556 (Fed.Cir.1984), and *UST, Inc. v. United States,* 9 CIT 352 (1985). On the other hand, the agency does have discretion to accept late submissions, but it is not required to do so, and deadlines generally have been sustained. *Cf. Brother Industries, Ltd. v. United States,* 15 CIT ——, ——, 771 F.Supp. 374, 383–84 (1991).

■ If the record indicated lack of adequate warning or of sufficient time in which to respond, resort to best information available would, at least arguably, have been inappropriate. *See, e.g., Daewoo Electronics Co. v. United States,* 13 CIT 253, 266–67, 712 F.Supp. 931, 944–45 (1989). However, it is clear that, in the absence of extension(s) from the ITA, Emmepi should have heeded the warning in the August 24, 1988 letter and responded. While that letter granted the company 15 more days to do so, even the most liberal interpretation

---

**3.** Moreover, the court notes in passing that, in an action such as this, it does have discretion to proceed even when administrative remedies have not been exhausted. *See* 28 U.S.C. § 2637(d); *Koyo Seiko Co. v. United States,* 15 CIT ——, ——, 768 F.Supp. 832, 835 (1991), *aff'd,* 972 F.2d 1355 (Fed.Cir.1992); *N.A.R., S.p.A. v. United States,* 14 CIT ——, ——, 741 F.Supp. 936, 944 (1990); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 346–47, 685 F.Supp. 1252, 1255–56 (1988); *Timken Co. v. United States,* 10 CIT 86, 92–93, 630 F.Supp. 1327, 1334 (1986). Indeed, there are numerous circumstances under which an appellate court may proceed without administrative remedies having been exhausted. *See generally McCarthy v. Madigan,* —— U.S. ——, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), and cases cited therein.

thereof could not have stretched them into 1989.[4]

## IV

The plaintiff also complains that use of the 1980 rate as the best information otherwise available was without foundation. It suggests several other rates as more relevant reflections of the pricing of the subject merchandise, reliance on which would have been more in keeping with ITA policy and practice.[5] The plaintiff points out the investigation conducted by Treasury was limited to one sale by one company and that the cost information and foreign-market value provided by the petitioner was used for adjustment purposes. *See* Plaintiff's Memorandum, pp. 19–20. In contrast, there was "full-fledged" review of companies' exporting of the merchandise during subsequent years. Any one, the plaintiff posits, would reflect the best information otherwise available. Finally, the plaintiff contends that it was unjust to revert to 1980 in view of the changes in the trade law since then.

On its part, the defendant emphasizes that it selects best information available on a case-by-case basis. Defendant's Memorandum, pp. 19, 26. Here, after

considering the zero percent margin calculated for plaintiff during the 1986–

1987 review, the highest (14.06 percent) margin calculated during the 1986–1987 review for the other parties, and the margin from the LTFV investigation, Commerce reasonably determined that the latter rate was the only dumping rate that would not reward plaintiff for its consistent pattern of unresponsive behavior.

*Id.* at 20.

█ The court's role is not to determine whether the information chosen was the "best" actually available. Rather, the court must affirm the ITA's choice if supported by substantial evidence on the record and otherwise in accordance with law. *E.g., N.A.R., S.p.A. v. United States,* 14 CIT at ——, 741 F.Supp. at 942, citing *Chinsung Indus. Co. v. United States,* 13 CIT 103, 106, 705 F.Supp. 598, 601 (1989). That is, the ITA has wide latitude to determine what constitutes best information otherwise available, and its approach generally has been one of adverse inference. Presuming that an unresponsive exporter may be hoping for a more favorable margin by not supplying complete, accurate and timely information, the ITA has tended to use information which is least favorable to that exporter[6], including data supplied by a petitioning domestic competitor[7]. In *Rhone*

---

4. In its first letter to the ITA, Emmepi had asked for an extension until after publication of the results for the administrative review of the preceding year. However, there was little basis for granting such an extension; answers to a questionnaire for one review period generally should not depend on the results of a prior review. Whatever the uncertainties on the part of foreign exporters, they do not excuse untimely responses to agency requests for information.

5. The plaintiff suggests that the agency could have used rates calculated for other respondents during the administrative reviews conducted for the years 1981 to 1985, or the actual figures for Emmepi or other exporters for the 1986–87 review.

6. In *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 526, 527, 717 F.Supp. 834, 836 (1989), *aff'd,* 901 F.2d 1089 (Fed.Cir.), *cert. denied sub nom. Floramerica, S.A. v. United States,* —— U.S. ——, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990), for example, the ITA defended its use of a punitive rate, stating that "its newly articulated policy is to use the highest

rate available for non-cooperative parties." *See also Chinsung Indus. Co. v. United States,* 13 CIT 103, 105, 705 F.Supp. 598, 601 (1989) ("The administrative practice of Commerce in deciding when to use the best information available seems to indicate that where the failure to submit adequate information has been seen as deliberate by the ITA, [it] has apparently heavily favored using alternative 'best information available' least favorable to a respondent").

7. *See, e.g., Pistachio Group of the Ass'n of Food Indus., Inc. v. United States,* 11 CIT 668, 671 F.Supp. 31 (1987). In *Asociacion Colombiana de Exportadores de Flores, supra,* on the other hand, the court remanded to the ITA, stating that it could not use the petitioner's rate merely because it was the highest where that use would affect future importers. The plaintiff urges this court to view the latter decision as dispositive on the issue of whether or not the ITA can rely on the highest rate available for noncomplying respondents "where that rate can have application beyond that for those respondents." Plaintiff's Memorandum, p. 24.

*Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190–91 (Fed.Cir.1990), its most recent affirmative discussion of this approach[8], the court of appeals stated:

> We believe a permissible interpretation of the best information statute allows the agency to make such a presumption and that the presumption is not "punitive." Rather, it reflects a common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced *current* information showing the margin to be less. The agency's approach fairly places the burden of production on the importer, which has in its possession the information capable of rebutting the agency's inference.

Footnote omitted; emphasis in original. In sum, the best-information rule has developed into a "club over recalcitrant parties or persons" who fail to cooperate with ITA original investigations or subsequent administrative reviews. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d at 1560.

 This is not to say, however, that the ITA can choose information out of context. Its authority to select best information otherwise available is subject to a rational relationship between data chosen and the matter to which they are to apply. It is this nexus which the plaintiff argues is lacking herein, pointing out that, in every case cited by the defendant in support of the proposition that the original deposit rate was the best information available, a relationship existed between agency, law, time, and/or parties. Here, it contends, "there was *no* unity of parties, *no* unity of timeframes, *no* unity of the administrative agencies involved and *no* unity of law." Plaintiff's Reply Memorandum, p. 17 (emphasis in original).

 In actions contesting the agency's choice of best information available in lieu of questionnaire responses, the court must determine whether or not that choice is relevant to the circumstances of the complainants. Indeed, the agency's stated policy has been to choose as best information otherwise available either the highest rate calculated for a responding party or the rate previously calculated for that party when unresponsive.[9] This is not to say that the ITA has not or may not use the rate developed during an original investigation as best information available, particularly when a party was involved in that proceeding.[10] However, in this action, the plaintiff was not so involved, nor was it an exporter of the subject merchandise at that time. Rather, the record shows that it became an exporter to the United States years later and that it provided timely information for its first, resultant administrative review[11] and then awaited the re-

---

8. *Cf. Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565 (Fed.Cir.1990).

9. In *Titanium Sponge From Japan; Final Results of Antidumping Duty Administrative Review*, 55 Fed.Reg. 42,227 (Oct. 18, 1990), for example, the ITA stated that, where it has resorted to best information available after non- or inadequate response by a party, it is

> departmental practice to base BIA on the higher of the company's own previous rate or the highest rate calculated for a responding firm in the current review.

*See also Florex v. United States*, 13 CIT 28, 33, 705 F.Supp. 582, 589 (1989) ("It is ITA's standard practice to assign the highest margin determined for any of the respondents to non-responding, or verification failing, producers"); *Seattle Marine Fishing Supply Co. v. United States*, 12 CIT 60, 679 F.Supp. 1119 (1988), *aff'd*, 883 F.2d 1027 (Fed.Cir.1989); *Uddeholm Corp. v. United States*, 11 CIT 969, 676 F.Supp. 1234 (1987).

10. For example, in *Tai Yang Metal Indus. Co. v. United States*, 13 CIT 345, 712 F.Supp. 973 (1989), the court held that the ITA could lawfully use the margin found for the plaintiff in the underlying investigation as the best information available. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed.Cir.1990). *Cf. Smith Corona Corporation v. United States*, 16 CIT ——, 796 F.Supp. 1532 (1992). The defendant cites administrative reviews to the same effect. *See* Defendant's Memorandum, p. 23 n. 19. However, in each of them, the party against which that rate was being applied participated in, or was exporting to the United States at the time of, the original investigation.

11. If, as the defendant now contends, there was a "consistent pattern of unresponsive behavior" on the part of the plaintiff, the court has been unable to discern it from the record at hand.

sults thereof, which ultimately were determined to be zero.

On this record, if "deference is not abdication and 'rational basis scrutiny' is still scrutiny" [12], the court must grant plaintiff's motion for judgment to the extent that its complaint about choice of best information otherwise available is remanded to the ITA for reconsideration and redetermination of the margin of dumping, if any, of plaintiff's merchandise during the review periods April 1, 1987 to March 31, 1989. The agency may have 60 days from the date hereof for such redetermination and to report the results thereof to the court, whereupon the plaintiff may have 30 days thereafter in which to respond, and the defendant may have 15 days to reply thereto.

## V

The court has carefully considered each of plaintiff's other points and finds them not to warrant discussion or affirmative relief. Thus, in all other respects, plaintiff's motion for judgment on the agency record must be, and it hereby is, denied.

So ordered.

---

12. *Nordlinger v. Hahn,* —— U.S. ——, ——, 112 S.Ct. 2326, 2341, 120 L.Ed.2d 1 (1992) (Stevens, J., dissenting).