**NACHI–FUJIKOSHI CORPORATION, Nachi–America, Inc. and Nachi Technology, Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Federal–Mogul Corporation and the Torrington Company, Defendant–Intervenors.**

Slip Op. No. 95–118.
Court No. 92–07–00502.

United States Court of International Trade.

June 23, 1995.

O'Melveny & Myers, Los Angeles, CA (Greyson L. Bryan, Bruce R. Hirsh and Steven A. Spencer), for plaintiffs Nachi–Fujikoshi Corp., Nachi–America, Inc. and Nachi Technology, Inc.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation

Branch, Civ. Div., U.S. Dept. of Justice (A. David Lafer and Marc E. Montalbine); of counsel: Stephen J. Claeys and Stacy J. Ettinger, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Frederick L. Ikenson, P.C., Washington, DC (Frederick L. Ikenson, Larry Hampel, Joseph A. Perna, V and J. Eric Nissley), for defendant-intervenor Federal–Mogul Corp.

Stewart and Stewart, Washington, DC (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Margaret L.H. Png and Robert A. Weaver), for defendant-intervenor the Torrington Co.

## *OPINION*

TSOUCALAS, Judge:

Plaintiffs Nachi–Fujikoshi Corporation, a producer and exporter of antifriction bearings, and its U.S. subsidiaries, Nachi–America, Inc. and Nachi Technology, Inc. (collectively "Nachi") move for judgment on the agency record pursuant to Rule 56.2 of the Rules of this Court. In their motion, plaintiffs contest the final results of administrative review issued by the United States Department of Commerce, International Trade Administration ("Commerce"), concerning antifriction bearings ("AFBs") from Japan. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed.Reg. 28,360 (1992). Specifically, Nachi claims that Commerce improperly (1) included its sampled sales shipped to the United States via air freight in the exporter's sales price ("ESP") database, and (2) disallowed a certain rebate claimed by Nachi. Nachi contends that these errors caused Commerce to overstate its dumping margin and rendered Commerce's Final Results unsupported by substantial evidence and contrary to law.

Defendant-intervenors Federal–Mogul Corporation ("Federal–Mogul") and The Torrington Company ("Torrington") oppose Nachi's challenge.

## Background

Commerce published antidumping duty orders on ball bearings, cylindrical roller bearings and spherical plain bearings and parts thereof from Japan, Germany, France, Italy, Romania, Singapore, Sweden, Thailand and the United Kingdom. *See Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan*, 54 Fed.Reg. 20,904 (1989).[1]

On June 28, July 19 and August 14, 1991, the ITA announced its initiation of administrative reviews of these orders with respect to sixty-three manufacturers and exporters, including Nachi–Fujikoshi Corporation and Nachi–America, Inc., for the period May 1, 1990 through April 30, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews*, 56 Fed. Reg. 29,618 (1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 56 Fed.Reg. 33,251 (1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 56 Fed.Reg. 40,305 (1991).

On March 31, 1992, Commerce issued its preliminary determinations in these second administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Prelimi-*

---

1. *See also Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany*, 54 Fed.Reg. 20,900 (1989); 54 Fed.Reg. 20,902 (France); 54 Fed. Reg. 20,903 (Italy); *Antidumping Duty Order: Ball Bearings and Parts Thereof From Romania*, 54 Fed.Reg. 20,906 (1989); *Antidumping Duty Order of Sales at Less Than Fair Value: Ball Bearings and Parts Thereof From Singapore*, 54 Fed.Reg. 20,907 (1989); *Antidumping Duty Or-* ders: *Ball Bearings, Cylindrical Roller Bearings, and Parts Thereof From Sweden*, 54 Fed.Reg. 20,907 (1989); *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value: Ball Bearings and Parts Thereof From Thailand*, 54 Fed.Reg. 20,909 (1989); *Antidumping Duty Orders and Amendments to the Final Determinations of Sales at Less Than Fair Value: Ball Bearings, and Cylindrical Roller Bearings and Parts Thereof From the United Kingdom*, 54 Fed.Reg. 20,910 (1989).

*nary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 57 Fed.Reg. 10,-868 (1992).[2]

On June 24, 1992, the ITA published the consolidated Final Results of these nine administrative reviews. *Final Results,* 57 Fed. Reg. at 28,360.

### Discussion

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. *Nachi's Air Freight Shipments*

In this review, Commerce sampled exporter's sales price transactions falling within a six-week period for each class or kind of merchandise where sales of such merchandise exceeded 2,000 transactions. Commerce's six-week sampling captured certain sales of AFBs shipped by Nachi via air freight to the United States.

Nachi asserts that it made its air freight shipments of AFBs on an *ad hoc* basis and that one third of these ESP transactions occurred during the six-week sample period. *Plaintiffs', Nachi-Fujikoshi Corporation,*

*Nachi-America, Inc. and Nachi Technology Inc., Memorandum in Support of Their Motion for Judgment on an Agency Record* ("*Nachi's Brief*") at 6. Nachi claims that, had Commerce tested, it would have found that its air freight transactions had not occurred evenly throughout the period of review. *Nachi's Brief* at 5. In addition, Nachi contends that its air freight charges for sampled ESP transactions accounted for over one half of the total costs for all of its period-of-review ESP sales. *Id.* at 6–7. Nachi maintains that the distortive effect of this air freight anomaly rendered Commerce's sample unrepresentative and argues that section 777A(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677f–1(b) (1988), requires that samples be representative. *Id.* at 4–5.

It is Nachi's position that, in the interest of fairness in pricing comparisons, Commerce should adjust for this air freight anomaly. *Id.* at 8–9. Therefore, Nachi requests that the Court instruct Commerce to exclude its sampled air freight shipments from the ESP sales database or, alternatively, that it multiply [     ] against the potential duties calculated for ESP air freight transactions instead of employing the higher multiplier of 8.69. Nachi explains that the 8.69 figure represents the ratio of total weeks in the year to sampled weeks, whereas its preferred multiplier represents the ratio of period-of-review air freight charges to sampled air freight charges. *Id.* at 3, 7; *Plaintiffs', Nachi-Fujikoshi Corporation, Nachi-America, Inc. and Nachi Technology Inc., Reply Brief in Support of its Motion for Judgment on an Agency Record* at 4.

In the Final Results, Commerce rejected Nachi's arguments stating:

In choosing a random time-sampling methodology, we have acted within the authority granted to the Department under section 777A to "use averaging and generally recognized sampling techniques." Nachi

---

**2.** *See also Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 57 Fed.Reg. 10,859 (1992); 57 Fed.Reg. 10,862 (Federal Republic of Germany); 57 Fed.Reg. 10,865 (Italy); 57 Fed. Reg. 10,875 (Sweden); 57 Fed.Reg. 10,878 (United Kingdom); *Ball Bearings and Parts Thereof From Romania; Preliminary Results Antidumping Duty Administrative Review,* 57 Fed.Reg. 10,-871 (1992); 57 Fed.Reg. 10,873 (Singapore); *Ball Bearings and Parts From Thailand; Preliminary Results of Antidumping Duty Administrative Review and Partial Termination of Administrative Review,* 57 Fed.Reg. 10,877 (1992).

does not argue that the time-sampling technique in general produces unrepresentative results, but that the particular sample selected using this technique has an air freight anomaly which must be adjusted. However, insofar as the Department has selected a representative sample, that sample must be considered to be reflective of the broad range of Nachi's sales transactions. Therefore, acting upon Nachi's proposals would compromise this sample and skew the results.

*Final Results,* 57 Fed.Reg. at 28,399. Commerce adheres to that position. *See Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Defendant's Brief")* at 8. In addition, Commerce points out that its sampled six weeks were chosen at random, one week from each two-month interval during the period of review. *Defendant's Brief* at 7. Commerce argues that, in view of Nachi's enormous number of ESP transactions for this period of review, it would not have been feasible or efficient to test in order to determine whether air freight transactions occurred evenly throughout the period before resorting to sampling. *Id.* at 9–10.

Federal–Mogul and Torrington support Commerce's inclusion of Nachi's ESP transactions, for which air freight charges were incurred, in the ESP sample of sales analyzed. *Opposition of Federal–Mogul Corporation, Defendant–Intervenor, to Plaintiffs' Motion for Judgment on an Agency Record ("Federal–Mogul's Brief")* at 3–10; *Opposition of The Torrington Company to Plaintiffs' Motion for Judgment on the Agency Record ("Torrington's Brief")* at 3–9.

The antidumping law expressly permits the use of sampling. Title 19, United States Code, section 1677f–1 states:

### § 1677f–1. Sampling and averaging

### (a) In general

For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority may—

(1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustments to prices is required, and

(2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

### (b) Selection of samples and averages

The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.

Thus, although sampling may be used under the circumstances described in subsection (a) of the statute, sampling may not be utilized in a manner which produces unrepresentative results. 19 U.S.C. § 1677f–1(b).

The Court has recognized that Commerce has been given broad discretion in its sample selection methodology. *GMN Georg Muller Nurnberg AG v. United States,* 15 CIT 174, 179, 763 F.Supp. 607, 612 (1991). *See also Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 13, 20–22, 704 F.Supp. 1114, 1120–22 (1989), *aff'd,* 901 F.2d 1089 (Fed.Cir.), *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); *Floral Trade Council v. United States,* 12 CIT 1163, 704 F.Supp. 233 (1988). In the instant case, Commerce reasonably exercised its discretion by using a random time-sampling methodology to select sample sales for the calculation of USP. Nachi does not dispute that sampling was appropriate in this case in view of its high volume of ESP transactions.

The sampling provision was implemented to ease the administrative burden on Commerce of examining every single transaction in a review and to afford Commerce flexibility in complex investigations. *See* H.R.Rep. No. 725, 98th Cong., 2d Sess. 45–46 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4910, 5172–73. *See also Floral Trade Council,* 12 CIT at 1167, 704 F.Supp. at 237. Conducting a pre-sampling investigation would have been time-consuming and inefficient and, hence, an ineffective work-saving device. *Cf. Floral Trade Council,* 12 CIT at 1168, 704 F.Supp. at 238. Therefore, testing to determine whether Nachi's air freight transactions oc-

curred evenly throughout the period of review would have defeated the intended purpose of 19 U.S.C. § 1677f–1.

Moreover, Commerce's sample was essentially representative of Nachi's period-of-review exporter's sales price transactions. Nachi concedes that Commerce confirmed that its bearing sales were consistent during the period of review. *Nachi's Brief* at 5. Further, Nachi does not dispute that it incurred air freight charges throughout the period of review or that the sales captured in Commerce's six-week random sample should have, to some extent, included sales shipped to the United States by air freight. The validity of Commerce's selected sample is not called into question simply because a portion of the sampled transactions deviate from the norm. If plaintiffs' argument were accepted and carried to an extreme, Commerce would be required to test to determine each and every adjustment to U.S. price (*e.g.,* commissions, credit expenses, warranty expenses, etc., before it could resort to sampling. Furthermore, Nachi's arguments implicitly presume that the dumping margins which Commerce found were attributable to the high incidence of air freight sales during the sampled period and/or to the allegedly uncharacteristically high air freight charges incurred on those sampled transactions. It is not clear to the Court that this is the case.

Accordingly, in view of the enormous number of ESP transactions involved and the attendant administrative burden of analyzing such volume, the Court finds that Commerce's sampling methodology for analyzing Nachi's ESP sales in its calculation of USP was reasonable in application and is in accordance with law.

### 2. *Nachi's Claimed Rebate*

■ In calculating foreign market value, Commerce disallowed Nachi's claim for a certain rebate on the basis that the claimed rebate was inadequately substantiated. Commerce's Final Results addressed the subject rebate, stating:

Nachi first indicated that it paid the rebate to NBC [Nachi Bearings Company] and other distributors, then argued that it paid the rebate to unrelated customers of NBC and related distributors. We have been unable to determine from the evidence on the record to whom this rebate was paid. Due to this ambiguity, we have disallowed this rebate claim for the final results.

*Final Results,* 57 Fed.Reg. at 28,402.

Nachi takes issue with Commerce's disallowance of the subject rebate, arguing that the rebate was paid to unrelated customers of NBC and to other related distributors who were later reimbursed by Nachi–Fujikoshi Corp. ("NFC"). *Plaintiffs' Brief* at 10. Nachi states that its Section C Supplemental Response explained to Commerce that the subject rebate was paid by NFC to NBC and certain other distributors in accordance with the amount of payment which those customers make in cash. *Id.* Nachi also explains that it provided Commerce with an example of how this rebate was calculated, as well as with a customer list of unrelated rebate recipients. *Id.* Nachi argues that, in the less than fair value investigation and in the first administrative review, its description of the reported rebate contained language identical to that used in the second review questionnaire response and Commerce verified, accepted and treated the rebate as a direct expense. Nachi requests that the Court instruct Commerce to allow the claimed rebate in this instance as well. *Id.* at 12.

Commerce, however, contends that, although it allowed five of Nachi's six claimed rebate programs, it disallowed the rebate at issue because it was unable to reconcile Nachi's post-preliminary determination explanation with the explanation in its original submissions. *Defendant's Brief* at 12 (citing A.R. (Conf.) Doc. No. 294 at 3–4).

Federal–Mogul and Torrington support Commerce's exclusion of Nachi's claimed rebate. *Federal–Mogul's Brief* at 10–13; *Torrington's Brief* at 9–12.

The Court finds Nachi's argument on this issue unpersuasive. Nachi argues here, as it argued below, that the rebate at issue was paid to unrelated customers of NBC and other related distributors, who were later reimbursed by NFC. *Plaintiffs' Brief* at 10; A.R. (Conf.) Doc. No. 294 at 3–4. In response to Commerce's Section C Question-

naire, however, Nachi reported that the subject rebate was paid to [          ]. A.R. (Conf.) Doc. No. 107 at Exhibit C/50. Faced with conflicting interpretations, Commerce reasonably was unable to determine from the record to whom the subject rebate was actually paid. In addition, neither Nachi's illustration of how this rebate was calculated, nor its list of rebate recipients, resolves this question.

■ Respondents have the burden of creating an adequate record to assist Commerce's determinations. *Tianjin Mach. Import and Export Co. v. United States*, 16 CIT 931, 936, 806 F.Supp. 1008, 1015 (1992); *see also Chinsung Indus. Co. v. United States*, 13 CIT 103, 705 F.Supp. 598 (1989); *Smith–Corona Group Consumer Prods. Div., SCM Corp. v. United States*, 713 F.2d 1568, 1577 n. 26 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *Timken Co. v. United States*, 11 CIT 786, 804, 673 F.Supp. 495, 513 (1987). In the case at bar, Nachi submitted ambiguous supporting documentation and must accept the consequences. *See Asociacion Colombiana*, 13 CIT at 24, 704 F.Supp. at 1124.

Commerce has been given broad discretion in making adjustments. *Smith–Corona Group*, 713 F.2d at 1577 n. 26. Because Commerce was unable to ascertain from the record to whom the reported rebate was paid, Commerce reasonably disallowed Nachi's rebate claim.

Therefore, the Court finds that for the purpose of determining foreign market value, Commerce's disallowance of Nachi's inadequately substantiated claimed rebate is supported by substantial evidence on the record and is in accordance with law.

### Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion for judgment on the agency record and sustains Commerce's Final Results in all respects.

### JUDGMENT