**Slip Op. 07-151**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

Before:  Nicholas Tsoucalas, Senior Judge

_____
                                        :
YANTAI TIMKEN CO., LTD. and THE         :
TIMKEN COMPANY,                         :
                                        :
         Plaintiffs,                    : PUBLIC VERSION
                                        : Court No.:  06-00020
         v.                             :
                                        :
UNITED STATES OF AMERICA,               :
                                        :
         Defendant,                     :
                                        :
         and                            :
                                        :
PEER BEARING COMPANY,                   :
                                        :
         Defendant-Intervenor.          :
_____ :


                                        October 22, 2007



**Held:** The United States Department of Commerce's final results are affirmed.  Plaintiffs' motion for judgment upon the agency record is denied.  This action is dismissed.


Stewart and Stewart, (Terence P. Stewart, John D. Stirk and William A. Fennell); Special Counsel:  Geert DePrest, for Yantai Timken Co., Ltd. and The Timken Company, Plaintiffs.

Peter D. Keisler, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michael D. Panzera and L. Misha Preheim); Of Counsel:  David Richardson, Senior Attorney, International Trade Administration, Department of Commerce, for the United States, Defendant.

Arent Fox, PLLC, (John M. Gurley, Nancy A. Noonan and Diana Dimitriuc Quaia) for Peer Bearing Company, Defendant-Intervenor.

**OPINION**

**TSOUCALAS, Senior Judge**:  Plaintiffs Yantai Timken Co., Ltd. ("Yantai") and The Timken Company ("Timken") move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging the determination of the International Trade Administration of the United States Department of Commerce ("Defendant" or "Commerce") in Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China, 71 Fed. Reg. 2,517 (Jan. 17, 2006) ("Final Results"), as amended 71 Fed. Reg. 9,521 (Feb. 24, 2006) ("Amended Final Results").[1]

**BACKGROUND**

On June 15, 1987, Commerce issued an antidumping duty order covering tapered roller bearings and parts thereof, finished and unfinished ("TRBs"), from the People's Republic of China ("PRC"). See Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China, 52 Fed. Reg. 22,667 (June 15, 1987)("Antidumping Duty Order").

On June 1, 2004, Commerce published a notice of opportunity to request an administrative review of the Antidumping Duty Order for the period of review, June 1, 2003 through May 31, 2004 ("POR").

---

[1]     The Amended Final Results did not impact the Final Results with respect to Yantai.  See Amended Final Results.

See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation: Opportunity to Request Administrative Review, 69 Fed. Reg. 30,873 (June 1, 2004). On June 30, 2004, Yantai requested that Commerce conduct a review of the entries of the TRBs that it exported to the United States for the POR. See Admin. R. Doc. 2. On July 28, 2004, Commerce initiated the seventeenth administrative review of the Antidumping Duty Order. See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 45,010 (July 28, 2004).

During the period August 5, 2004 through May 5, 2005, Yantai responded to Commerce's original questionnaire and six supplemental questionnaires. See Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China Preliminary Results of Antidumping Duty Administrative Review and Notice of Intent to Rescind in Part ("Preliminary Results"), 70 Fed. Reg. 39,744, 39,745 (July 11, 2005). During the period April 25 through April 29, 2005, Commerce conducted a factors-of-production ("FOP") verification at Yantai's manufacturing plant in the PRC. See Preliminary Results, 70 Fed. Reg. at 39,746. During the period May 16 through May 19, 2005, Commerce conducted a constructed export price ("CEP") verification at the facilities of

Yantai's parent company, Timken,[2] in Canton, Ohio.  See id.

On June 30, 2005, Commerce issued the FOP and CEP verification reports.   See Public Admin. R. Doc. 176 ("CEP Verification Report"); Public Admin. R. Doc. 177 ("FOP Verification Report"). In the verification reports, Commerce identified several factors of productions and expenses that were not verified, including U.S. rebates and commissions, U.S. indirect selling expenses ("ISEs"),[3] electricity and gas consumption, and U.S. warehouse expenses.  See id.

On July 11, 2005, Commerce issued the Preliminary Results, wherein Commerce found, inter alia, "that the information necessary to calculate an accurate and otherwise reliable margin is not available on the record with respect to Yantai."  Preliminary Results, 70 Fed. Reg. at 39,749.  Commerce further found that Yantai "withheld information, failed to provide information requested by [Commerce] in a timely manner and in the form required, significantly impeded the proceeding, and provided unverifiable information."  Id.  Thus, pursuant to sections 776(a)(2)(A), (B), (C) and (D) of the Tariff Act of 1930, as

---

[2]    Yantai is a wholly owned subsidiary of Timken.  See Pls.' Disclosure of Corporate Affiliation and Financial Interest.

[3]    "[ISEs] are selling expenses that the seller would incur regardless of whether particular sales were made but that reasonably may be attributed, in whole or in part, to such sales (e.g., salesperson's salaries)."  U.S. Dep't of Commerce, Antidumping Manual, Ch. 8 at 44.

amended, 19 U.S.C. § 1677e, Commerce preliminarily determined to resort to the facts otherwise available. Id. In addition, Commerce found that Yantai "failed to act to the best of its ability in supplying [Commerce] with the requested information." Id. at 39,750. Thus, pursuant to section 776(a) and (b), Commerce preliminarily determined to apply total adverse facts available in its calculation of the dumping margin. Id. at 39,751.

At a meeting held on July 19, 2005, Yantai requested permission from Commerce to submit additional information and/or explanations describing what it had demonstrated during verification regarding its ISEs. Pls.' Mem. P. & A. Supp. Mot. J. Agency R. ("Pls.' Mem.") at 12; Def.'s Resp. Mot. J. Agency R. ("Def.'s Resp.") at 11. On August 4, 2005, Yantai requested permission to "submit additional information for the record." Def.'s Resp. at 11; Public Admin. R. Doc. 189. On August 8, 2005, Yantai again requested permission to submit additional information and a chance to verify its reported information. See Def.'s Resp. at 11; Public Admin. R. Doc. 191. On August 15, 2005, Peer Bearing Company ("Peer"), a respondent in the administrative review, submitted a letter arguing that Commerce should reject Yantai's untimely factual information. See Def.'s Resp. at 11. On September 21, 2005, Commerce issued a letter denying Yantai's request. See Public Admin. R. Doc. 198.

On October 6, 2005, Yantai submitted its case brief. See

Confidential Admin. R. Doc. 75.  Thereafter, Commerce determined that portions of the case brief contained new factual information and requested that Yantai submit a revised case brief with the new information redacted.  See Confidential Admin. R. Doc. 77.  As a result of meetings between Yantai and Commerce held in October and November 2005, Commerce reconsidered its rejection of the materials previously deemed to be new factual information in Yantai's case brief and accepted some portions upon finding that they constituted argument of facts already on the record or information requested by Commerce.  See Def.'s Resp. at 12-13; Confidential Admin. R. Doc. 77.  Still other portions were determined to be new factual information and Commerce requested that Yantai submit a revised case brief redacting those portions.  See Confidential Admin. R. Doc. 77.

On November 30, 2005, Yantai submitted its revised and redacted case brief arguing, inter alia, that:  (1) it should not be given an adverse facts available rate because they cooperated to the best of their ability; and (2) Commerce apply partial adverse facts available because application of total adverse facts available was unwarranted.  See Confidential Admin. R. Doc. 78.  Peer submitted a rebuttal brief arguing that Yantai should continue to receive total adverse facts available.  See Public Admin. R. Doc. 223.  On December 9, 2005, Commerce held a hearing on the issues raised in the briefs of interested parties.  See Pls.' Mem.

at 13.

On January 17, 2006, Commerce published the <u>Final Results</u>, wherein Commerce determined, <u>inter alia</u>, that application of partial adverse facts available was warranted with respect to Yantai's ISEs, rebates and commissions. <u>See</u> <u>Final Results</u> 71 Fed. Reg. at 2520-21. Commerce found, <u>inter alia</u>, that Yantai could not substantiate its ISEs, rebates and commissions, and that Yantai did not act to the best of their ability to provide requested information to Commerce during verification. <u>See</u> <u>id.</u> Commerce thus used the total verified ISEs based on Timken's financial reports and applied to all sales the maximum amount of rebates and commissions that customers and sales agents could earn. <u>See</u> <u>id.</u> The antidumping margin was reduced from the total adverse facts available rate of 60.98% to a calculated rate including partial adverse facts available for the expenses that failed verification of 41.58%. <u>See</u> <u>id.</u> at 2523.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a (a) (2000) and 28 U.S.C. § 1581 (c) (2000).

**STANDARD OF REVIEW**

In reviewing a challenge to Commerce's final determination in an antidumping administrative review, the Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966) (citations omitted). In an administrative review, the court cannot substitute its judgment for that of Commerce when the choice is "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Am. Spring Wire Corp. v. United States, 8 CIT 20, 22, 590 F. Supp. 1273, 1276 (1984)(quoting Universal Camera, 340 U.S. at 488).

**DISCUSSION**

I.   **Parties' Contentions**

   A.   **Plaintiffs' Contentions**

Plaintiffs challenge several aspects of the Final Results. First, Plaintiffs take issue with Commerce's determination to resort to partial adverse facts available in calculating Yantai's ISEs. Pls.' Mem. at 22.  Plaintiffs explain that, in employing partial adverse facts available, Commerce used the figure for total ISEs from Timken's audited financial statements, which included administrative expenses, corporate costs and "other costs" attributable to manufacturing expenses. Id.  Plaintiffs contend that ISEs are to be limited to expenses supporting sales activities pursuant to 19 U.S.C. § 1677a(d)(1)(D).  Plaintiffs further contend that Commerce is obligated to calculate dumping margins as accurately as possible even when employing adverse facts available. Id. at 27.  Because Commerce's methodology results in using a figure for Yantai's ISEs that includes manufacturing expenses, Plaintiffs argue that the method Commerce employed in calculating its ISEs is unreasonable and assert that Commerce must employ a more accurate methodology. Id.  Claiming that Commerce was provided all of the possible expenses to be included in calculating Yantai's ISEs, id. at 32-33, Plaintiffs argue that Commerce unlawfully departed from its practice by applying adverse facts rather than adding those expenses that Commerce believed were improperly excluded, id. at 32.

Second, Plaintiffs contend that Commerce acted contrary to its practice and contrary to case law when it directed Yantai to redact certain portions of its case brief following the issuance of the Preliminary Results on the ground that they contained unsolicited new information submitted beyond the agency's deadline for the submission of factual information. Id. at 27. In support, Plaintiffs cite to 19 C.F.R. § 351.309(b)(1), which provides that Commerce "will consider written arguments in case or rebuttal briefs." Id. at 28. Plaintiffs claim that their submittal contained explanations and statements regarding the facts already on the record, and therefore, Commerce's rejection was improper. Id.

Plaintiffs assert that Commerce has, in other cases, accepted such explanations of factual information already in a record as not constituting new factual information. Id. at 28-29. Arguing that Commerce rejected materials that "corroborate claims and data previously timely submitted," Plaintiffs contend that Commerce's refusal to do so in the instant matter is contrary to its practice. Id.

Third, Plaintiffs contend that Commerce acted contrary to its obligation to calculate a dumping margin that is as accurate as possible when it refused to accept the supplemental materials submitted to verify the ISEs following the issuance of the Preliminary Results. Id. at 30-31. Citing Timken U.S. Corp. v.

United States, 28 CIT 329, 318 F. Supp. 2d 1271 (2004), aff'd, 434 F.3d 1345 (Fed. Cir. 2006), Plaintiffs contend that Commerce is required to accept new information following issuance of a preliminary determination if necessary to determine dumping margins as accurately as possible.  Id. at 30-31.

Fourth, Plaintiffs argue that the record does not support Commerce's determination that the reported ISEs were not tied to the financial statements.  Id. at 33-34.  Plaintiffs explain that Commerce had identified the following issues as problematic:  "(1) the company's failure to include certain expenses in the reported ISEs, (2) the failure to identify the ratios used to allocate expenses between the auto bearing, industrial bearing, and steel businesses, and (3) the fact that cost center information for all of the costs was not available until the end of verification so that the information in verification Exhibit 8 could not be used to demonstrate completeness." Id. at 34.  Plaintiffs, however, contend that "these issues do not detract from the evidence showing that the reported expenses were tied and accounted for."  Id. at 36.

Specifically, Plaintiffs claim that:  (1) "all expenses were duly reported in the response, and were tied to the Company's books and records," id. at 35; (2) although Commerce was not provided the allocation ratios of Timken's Corporate Center costs at verification, the reported figures should be accepted as Plaintiffs' methodology was conservative and over-inclusive, id.; and (3)

regardless of the availability of cost center data, Commerce was able to judge the completeness of the company's reporting because all of the line items for expenses were included on the internal reports used to calculate the reported expenses, id. at 36. Plaintiffs thus contend that the record does not support Commerce's conclusion that the expenses did not tie to the financial statements. Id. at 33.

Finally, Plaintiffs claim that Commerce's decision to reject the rebates and commissions on aftermarket sales as reported was contrary to its normal practice. Id. at 37. Plaintiffs claim that Yantai reported commissions and rebates that customers and agents were entitled to earn rather than the actual amounts paid. Id. According to the Plaintiffs, Commerce found during verification that Yantai's customers and agents had, in fact, earned less than the reported amounts. Id. Claiming that the inaccurate reporting was adverse to Yantai's interests, Plaintiffs contend that Commerce should have accepted the reported amount as a conservative estimate pursuant to Commerce's normal practice. Id.

Additionally, Plaintiffs assert that Commerce, in applying adverse facts available, improperly determined to deduct amounts for rebates and commissions from all U.S. sales, including sales to original equipment manufacturers ("OEM"), when findings applied only to aftermarket sales. Id. Plaintiffs thus contend that the resulting dumping margin was improperly punitive and assert that

Commerce acted contrary to its obligation to determine an accurate dumping margin. Id. at 38-39.

Plaintiffs further contend that Commerce's normal practice is to accept information presented by a respondent on the record absent any information to the contrary. Id. at 39. Arguing that the record is "consistent and unchallenged" in that rebates and commissions were paid only in the context of aftermarket sales, Plaintiffs state that Commerce acted contrary to its normal practice by applying adverse facts available to its OEM sales. Id. Plaintiffs thus complain that Commerce erred by refusing to apply the reported rebates and commissions on aftermarket sales and by applying the rebates and commissions to all sales including OEM sales. Id. at 40.

B.    Defendant's Contentions

Commerce contends that its application of partial adverse facts available with respect to Yantai's ISEs, rebates and commissions is supported by substantial evidence and is otherwise in accordance with law. Def.'s Resp. at 21. Commerce states that Yantai failed verification and Commerce was not obligated to accept the post-verification submissions. Id.

With respect to its ISEs, Commerce claims Yantai failed to "provide the explanation and information necessary to trace its reported [ISEs] to its audited financial statements." Id. at 21-22. According to Commerce, the cost center information provided "did not

include all of the cost centers for Yantai Timken's U.S. entity" and therefore "[could not] be used to demonstrate completeness, or as a basis for tracing down from the financial statements to proof of payment for these expenses." Id. Commerce notes that Yantai provided the incomplete cost center information after Commerce had completed the ISEs section of the verification "so that it was not possible to identify whether all the appropriate expenses were included in Timken's calculation of [ISEs] for the POR." Id.

Moreover, Commerce states that, prior to verification, Yantai had not reported in its questionnaire responses the ratios it used to allocate its ISEs to the various sections of the company by either manufacturing or selling functions. Id. at 22. Commerce further states that, at verification, Yantai similarly failed to provide the allocation ratios. Id. According to Commerce, it was thus unable to verify Yantai's allocation methodology for its ISEs without these ratios and the financial records tied to the audited financial statements. Id.

Commerce states that it only learned during verification that Yantai's reported ISEs in its questionnaire responses did not include all of the ISEs reported in its audited financial statements. Id. at 22-23. According to Commerce, it identified additional ISEs that should have been reported, but were not, upon examination of the profit and loss statements. Id.

Based on the foregoing, Commerce concluded that Yantai's

reported ISEs were not verified with the exception of the total ISEs figure in Timken's audited financial statements.  Id.  Because Yantai failed to report all of its ISEs and it failed to support its reported ISEs figures and allocations, Commerce contends that it was required to resort to facts available pursuant to the antidumping statute and that it had "substantial basis for rejecting Yantai's request for a second verification."  Id. at 23-24.

Commerce argues that it properly determined to apply an adverse inference to facts available because the record demonstrates that Plaintiffs did not cooperate to the best of their ability.  Id. at 26.  Commerce states that Plaintiffs' "failure to submit in a timely manner the supporting documentation that Commerce requested precluded Commerce from verifying the company's reported [ISEs]."  Id. at 28.  In addition, Commerce contends that Yantai "did not provide any documentation beyond the audited financial statements to support the calculations and representations at issue" and this failure "precluded Commerce from determining whether the submitted information was accurate and complete."  Id.  Commerce also discovered information at verification which contradicted Yantai's questionnaire responses.  Id.

According to Commerce, Plaintiffs admitted their capacity to comply with Commerce's requests in their post-verification brief, yet Plaintiffs offered no justification for failing to provide the information in a timely manner.  Id. at 28-29.  Commerce notes that

Plaintiffs do not argue that they were unable to understand the nature of Commerce's request for information, that they were unfamiliar with the verification or that Commerce's instructions were unclear. Id. at 29. Commerce contends that "[a]n adverse inference was warranted because a reasonable respondent would have made some effort to ensure Commerce would be able to verify the information that it had reported for verification rather than waiting until after the verification report has been issued to seek a second round of verification." Id. Finding that Plaintiffs had the ability to provide the requested information, but failed to provide complete and accurate information without any justification, Commerce concludes that it properly determined that Plaintiffs failed to cooperate to the best of their ability. Id.

Commerce next argues that it cannot simply add the unreported ISEs discovered at verification to the reported ISEs figure as suggested by the Plaintiffs because the reported ISEs figure and allocations also failed verification. Id. at 34-35. Furthermore, Commerce contends that its selection of the total ISEs from Timken's audited financial statement is based upon a reasonable inference. Id. at 35. Even though the figure may include manufacturing expenses, Commerce notes that "the allocation Yantai Timken reported between indirect manufacturing and selling expenses failed verification and is therefore not reliable information upon which to make any allocation." Id. at 35-36. As Yantai had failed

verification of its ISEs allocations, Commerce states that it had "no information upon the record as to what portion, if any, of the total [ISEs] figure in the audited financial statements is associated with manufacturing." Id. at 36. Accordingly, Commerce claims that its selection of the total ISEs figure from the audited financial statements as partial application of adverse fact available is supported by substantial evidence. Id.

In response to Plaintiffs' assertion that Commerce improperly rejected explanations provided after verification had been completed, Commerce claims that Timken's submissions were properly rejected as they contained discussion of new facts. Id. at 24-26. Commerce argues that it may, at its discretion, accept new information after verification, but it is not obligated to do so. Id. at 24. Commerce further argues that it did not abuse its discretion by refusing to accept new information submitted by Timken. Id. at 25. Since verification serves to ascertain the accuracy and completeness of respondents' submissions without requiring their entire books and records to be on the record of the administrative proceedings, Commerce argues that accepting new information submitted post-verification would undermine this purpose. Id. at 25-26. As such, Commerce asserts that Yantai should not be permitted to rehabilitate its failed verification by submitting new information and explanation. Id. at 26. Indeed, Commerce suggests that Plaintiffs, by referring to "extra-record

facts" in their motion, are essentially asking the Court to conduct a new verification. Id. at 29-31.

Commerce argues that Plaintiffs' reliance on 19 C.F.R. § 351.309(b)(1) as authority to submit its post-verification submissions is unavailing because "that regulation refers to the presentation of legal arguments and explanations concerning information already submitted on the record and subjected to verification." Id. at 32. Citing case law, Commerce argues that "case and rebuttal briefs are not an appropriate place to provide new information along with explanations of that new information." Id. In the instant matter, Commerce states that it "reasonably determined that it was too late in the proceeding to accept new information and explanations about that new information because the deadline for submission of new factual information had passed and such information was not subject to the test of the verification which took place." Id. Commerce agrees with the Plaintiffs that its usual practice is to accept explanations of factual information already on the record, but notes that Plaintiffs here sought to submit new factual information. Id. at 33.

In addition, Commerce argues that Plaintiffs' reliance on Timken, 28 CIT 329, 318 F. Supp. 2d 1271 (2004), is misguided because the respondent there sought to correct errors in its questionnaire response and miscategorized sales after the preliminary determination. Id. Commerce argues that Plaintiffs

here seek to submit new information and explanations of new information after verification to remedy failures at verification. Id. If Plaintiffs were permitted to do so, Commerce argues that there would be no incentive for respondents to report information accurately in their pre-verification submissions since they would be permitted to submit new information following verification guised as "corrections." Id. at 34.

With respect to Plaintiffs' claim regarding rebates and commissions, Commerce contends that its determination to apply the maximum rebates and commission rate as partial adverse facts available is supported by substantial evidence. Id. at 36. Commerce states that at verification Yantai failed to demonstrate the total amount of rebates and commissions paid to its customers and to tie the reported amounts to its audited financial statements. Id. Specifically, Commerce states that while Yantai reported that it granted rebates and paid commissions on U.S. sales, it could not demonstrate the amounts or the recipients of those rebates and commissions. Id. at 37. Commerce further states that Yantai submitted worksheets at verification indicating that no rebate and commission payments were made, but those worksheets could not be tied to internal accounting documents. Id. at 38. Accordingly, Commerce found that it had "no verifiable way to determine what sales received the reported rebates and commissions, and therefore properly resorted to facts available." Id. Commerce thus

determined that Yantai had not acted to the best of its ability because it failed to provide information and explanation within Yantai's control. Id. at 38-39. Commerce therefore contends that it reasonably exercised its discretion to apply as adverse facts available the highest of the reported commission and rebate rates to all U.S. sales. Id. at 39.

In response to Plaintiffs' assertion that Yantai's reported figures should be accepted as conservative estimates, Commerce argues that it could not even verify that the reported figures were conservative as claimed. Id. Because Commerce was not provided with Yantai's books and records with which to verify the reported rebates and commissions figures, Commerce contends its application of the highest of the reported commission and rebate rates to all U.S. sales was proper and reasonable. Id.

**C.   Defendant-Intervenor's Contentions**

Peer supports Commerce's application of partial adverse facts available, and accordingly, requests that the Court deny Plaintiffs' motion. Defendant-Intervenor's Mem. P. & A. Opp'n Pls.' Mot. J. Agency R. ("Peer's Opp'n") at 1-2. In addition to the arguments put forth by Commerce in support of the Final Results, Peer notes that Plaintiffs, in support of their proposed adjustment of the ISEs, erroneously rely on "Commerce decisions and court cases predicated on reliable data, not on partial adverse facts available." Peer's Opp'n at 10-11.

Peer goes on to argue that Yantai failed verification of a number of expenses and notes that some of the expenses reported to Commerce were based on preliminary or hypothetical data. Id. at 11-12. Peer contends that such significant verification failures would normally result in the application of total facts available and adds that the deficiencies in Plaintiffs' response and their inadequate efforts at verification are more egregious in light of the fact that Plaintiffs initiated the review and knew that verification was mandatory. Id. at 12.

Peer next argues that Commerce properly applied the full amount of ISEs listed on the audited financial statements of Timken consistent with the statute. Id. at 12-17. Moreover, Peer contends that "[o]nce it determines that it is appropriate to assign adverse facts available, Commerce has discretion in choosing a specific dumping margin." Id. at 17. Noting that "Commerce is not required to prove that the adverse facts available rate is the best information," id., Peer thus concludes that Commerce properly "used Timken's [ISEs] at the level at which such expenses were verified and substantiated on the record," id. at 18.

Rather than adopting Yantai's approach of adding the expense items that were excluded from the reported ISEs, Peer contends that, at minimum, Yantai should have demonstrated the appropriateness of excluding a part of the ISEs appearing on the audited financial statements. Id. Indeed, Peer notes that "it is the respondent, and

not Commerce, that bears the burden of demonstrating its entitlement to a favorable adjustment." Id. at 19. Peer contends, however, that the "record of this case does not substantiate Yantai Timken's claim that the company's [ISEs] should be allocated between the selling and the manufacturing function." Id. Because Yantai failed to provide Commerce with source documents that could demonstrate that Yantai sought to exclude expenses supporting functions other than sales, Peer contends that Commerce was correct to include the entire amount of the ISEs on Timken's audited financial statements. Id. at 19-20.

Peer also contends that Commerce did not err in refusing Yantai's post-verification submission and requesting Yantai to redact a portion of its case brief. Id. at 20-24. According to Peer, Plaintiffs rely on cases which involve verified information and respondents in those cases did not seek to recharacterize unverified data. Id. at 20-26. While conceding that courts have allowed parties to submit information which corrected or corroborated the record after the factual information deadline and after the issuance of preliminary results, Peer contends that those cases did not involve unreliable respondent data. Indeed, Peer contends that the controlling case law requires finding that Plaintiffs should have provided the additional explanations during verification and not afterwards. Id. at 21-22.

Peer thus agrees with Commerce that application of partial

adverse facts available with respect to Yantai's ISEs was appropriate and disagrees with Plaintiffs' argument that Commerce should have simply added to Yantai's ISEs those expense items that were not included. Id. at 25-28. Peer further contends that "Commerce's decision to include all [ISEs] appearing on the audited financial statements, as partial adverse facts available, is consistent with other determinations." Id. at 27. Peer notes that, in any event, the statute does not allow Commerce to rely on unverified data to calculate dumping margins as suggested by the Plaintiffs. Id. at 26.

Peer adds that Yantai is the only party in possession of the documents that could prove completeness, but it has failed to put forth its best effort. Id. at 26. In Peer's view, Plaintiffs' proposed adjustment would reward them for failing to adequately report to Commerce accurate and complete figures or to support the figures with company's books and records. Id. at 26-27. Peer further contends that Commerce's determination to employ partial adverse facts available here is consistent with prior practice. Id. at 27.

In addition, Peer concurs with Commerce's application of adverse facts available to Yantai's commissions and rebates. Peer contends that: (1) Plaintiffs failed to meet their burden of "building an adequate record" and providing "accurate and complete" information," id. at 30; (2) Commerce could not verify even one

transaction selected at verification, id. at 31; and (3) in arguing that Commerce's normal practice is to accept conservative estimates, Plaintiffs cite to Commerce decisions that are inapplicable to the instant matter because they are based on verified respondent data, id.  Peer further contends that Commerce's calculation of the rebates and commission was not punitive and was consistent with Commerce precedent.  Id. at 34-35.

## II.  Analysis

### A. Verification

The Court first addresses whether Commerce properly determined that Yantai's reported ISEs were not tied to the financial statements.  The Court reviews Commerce's verification procedures for an abuse of discretion.  See Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1383-84 (Fed. Cir. 2001) (citing Micron Tech., Inc. v. United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997)).

The antidumping statute mandates that Commerce verify "all information relied upon in making . . . a final determination in a review."  19 U.S.C. § 1677m(i)(3).  However, it does not set forth any particular method for conducting verification.  Rather, "[t]he decision to select a particular [verification] methodology rests solely within Commerce's sound discretion."  Hercules, Inc. v. United States, 11 CIT 710, 726, 673 F. Supp. 454, 469 (1987).

Indeed, "the statute gives Commerce wide latitude in its verification procedures." American Alloys, Inc. v. United States, 30 F.3d 1469, 1475 (Fed. Cir. 1994).

In the instant case, the Court finds that Commerce did not abuse its discretion in finding that Yantai's ISEs figures were not verified. The record indicates that Yantai, in calculating the ISEs it reported to Commerce, allocated certain costs to Yantai's various divisions. See CEP Verification Report at 14. Each expense was allocated depending on the way each division benefitted from the expense. See id. Expenses were also allocated depending on the selling and manufacturing functions of each division. See id. Prior to verification Yantai did not provide the ratios it used to allocate its ISEs to the various divisions of the company and between manufacturing and selling functions. See id. At verification, Yantai similarly failed to provide the allocation ratios. See id.

The record further indicates that Yantai provided no documentation for its ISEs below the level of the profit and loss statement for the bearings division. See id. Yantai failed to provide "sub-ledgers and other source documents to tie reported expenses such as warehousing expenses, international freight, commissions, rebates or ISEs to its audited financial statements" despite clear statements in the verification outline that such documents were required. Issues and Decision Memorandum for the

Final Results of the 17th Administrative Review of the Antidumping Duty order on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China ("Issues & Decision Memo") at 13.  Indeed, Yantai was informed that it "must demonstrate how the data submitted in the response reconciles to Timken's general ledger, cost accounting system, and financial statements."  Public Admin. R. Doc. 152.  Commerce therefore determined that it was not able to verify the accuracy of Yantai's questionnaire responses or rely on the reported figures to calculate accurate margins due to Yantai's failure to provide the requisite requested documents that would tie the reported data to the audited financial statements.  See Issues & Decision Memo at 13-14.

The record indicates that Commerce learned at verification that Yantai did not report all of the ISEs on its audited financial statements "despite the statement in its questionnaire response that it included the ISEs as classified in its accounting system." Issues & Decision Memo at 22.  At verification, Yantai explained to Commerce that it had excluded certain expenses on the belief that they "did not pertain to the production of the subject merchandise in the PRC or the sale of the subject merchandise in the United States."  Id.  At verification, Commerce identified yet more expenses that Yantai failed to report that should have been reported.

The record further indicates that Yantai provided a list of

cost centers after the relevant section of verification had been completed, and therefore, the expenses could not be verified. See CEP Verification Report at 14. The list provided failed to include all of the cost centers, and it "[could not] be used to demonstrate completeness, or as a basis for tracing down from the financial statements to proof of payment for these expenses." Issues & Decision Memo at 23.

The Court finds no support in the record for Plaintiffs' conclusory allegations that "all expenses were duly reported in the response, and were tied to the Company's books and records" and that "Commerce was able to judge the completeness of the company's reporting because all of the line items for expenses were included on the internal reports used to calculate the reported expenses." Pls.'s Mem. at 35, 36. Similarly meritless is Plaintiffs' argument that Commerce should accept their reported figures because their methodology is conservative and over-inclusive. Given the wide latitude accorded Commerce with respect to its verification method, the Court finds Commerce did not abuse its discretion in finding that Yantai failed verification of its ISEs.

**B.   Supplemental Materials**

The Court next addresses Plaintiffs' argument that Commerce: (1) acted contrary to its obligation to calculate a margin that is as accurate as possible when it refused to accept the supplemental materials submitted to verify the ISEs following the issuance of the

preliminary determination, Pls.' Mem. at 30-32; and (2) acted contrary to its practice and to case law when it directed Yantai to redact certain portions of its case brief, id. at 27-29.

With respect to the former argument, Plaintiffs rely on Timken, 28 CIT at 339, 318 F. Supp. 2d at 1279, for the proposition that Commerce is required to accept new information following issuance of a preliminary determination to fulfill its obligation to calculate accurate dumping margins. Pls.' Mem. at 30-31. Plaintiffs, however, misinterpret Timken. As correctly stated by Commerce and Peer, Timken permits submission of information after a preliminary determination to correct errors of information already on the record. See 434 F.3d at 1353-54. Timken is inapplicable to the instant case because Plaintiffs here sought to introduce new factual information after Commerce issued the preliminary results.

"Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." Reiner Brach GmbH & Co. v. United States, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002). Courts have acknowledged "Commerce's policy of setting time limits to be reasonable" and necessary to "complete its work." Reiner Brach, 26 CIT at 559, 206 F. Supp. 2d at 1334.

In the instant matter, the deadline for submitting new factual information was October 18, 2004. See Public Admin. R. Doc. 217. Plaintiffs, however, sought to submit new factual information in

August 2005. By then, the deadline to submit new factual information had long passed, the verification had taken place and the Preliminary Results had been issued. Moreover, throughout the administrative review process, Yantai had ample opportunities to submit complete and accurate information. Indeed, Yantai submitted responses to Commerce's original questionnaire and to Commerce's six supplemental questionnaires. Having determined that Yantai failed verification because it did not report complete and accurate information to Commerce in its questionnaire responses and because it did not provide the necessary documents to Commerce during verification, Commerce reasonably rejected Yantai's supplemental submissions in enforcing its time limitations. In order for Commerce to fulfill its mandate to administer the antidumping duty law, including its obligation to calculate accurate dumping margins, it must be permitted to enforce the time frame provided in its regulations. See e.g., Tatung Co., v. United States, 18 CIT 1137, 1140-41, 1994 WL 704952, at *4 (1994)(stating that "[d]ue to stringent time deadlines and the significant limitations on Commerce's resources, 'it is vital that accurate information be provided promptly to allow the agency sufficient time for review'").

The Court also finds no merit to Plaintiffs' latter argument that Commerce acted contrary to its own regulations when it rejected explanations and statements regarding the facts already on the record. Pls.' Mem. at 28. Plaintiffs claim that Commerce should

not have redacted portions of its case brief pursuant to 19 C.F.R. § 351.309(b)(1), which provides that Commerce "will consider written arguments in case or rebuttal briefs filed within the time limits in this section."

The record demonstrates that the materials Plaintiffs sought to submit to Commerce in Yantai's case brief, which Commerce then rejected, directly relate to issues that Commerce determined unverified. Commerce reviewed Plaintiffs' case brief and accepted materials that explain and/or corroborate information already on the record and specifically rejected information it deemed to constitute new information. Commerce reasonably determined that the new information could not be accepted because the deadline had long passed and the information was not subjected to verification. The regulation relied upon by the Plaintiffs, of course, does not require Commerce to accept new factual information beyond the established deadline for submitting such information. See 19 C.F.R. § 351.309(b)(1). The Court therefore finds that Commerce properly exercised its discretion in compliance with its regulation in rejecting new factual information.

Based on the foregoing, the Court finds little merit to Plaintiffs' arguments and holds that Commerce properly determined to: (1) reject the supplemental materials submitted following the issuance of the preliminary determination; and (2) request redaction of the new factual information in the case brief. The Court finds

Commerce's determinations reasonable and supported by substantial evidence.

**C.  Application of Partial Adverse Facts Available**

Plaintiffs argue that Commerce erred in applying adverse facts available to Yantai's ISEs, commissions and rebates.  Application of adverse facts available is a two-step process.  First, Commerce may resort to "facts otherwise available" or "facts available" if:

> (1) necessary information is not available on the record, or
> (2) an interested party or any other person--
>     (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
>     (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
>     (C) significantly impedes a proceeding under this subtitle, or
>     (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,
> the administering authority and the Commission shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle.  19 U.S.C. § 1677e(a).

First, "[t]he focus of subsection (a) is respondent's <u>failure to provide information</u>.  The reason for the failure is of no moment.  The mere failure of a respondent to furnish requested information - for any reason - requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination."  <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373,

1381 (Fed. Cir. 2003).

Second, pursuant to 19 U.S.C. § 1677e(b), Commerce may employ adverse inferences to the "facts otherwise available" or "facts available" if:

> the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle, may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available. Such adverse inference may include reliance on information derived from--
> (1) the petition,
> (2) a final determination in the investigation under this subtitle,
> (3) any previous review under section 1675 of this title or determination under section 1675b of this title, or
> (4) any other information placed on the record.

The Court of Appeals for the Federal Circuit ("CAFC") has clarified that "the statutory mandate that a respondent act to 'the best of its ability' requires the respondent to do the maximum it is able to do." Nippon Steel, 337 F.3d at 1382. Accordingly, Commerce must: (1) "make an objective showing that a reasonable and responsible importer would have known that the requested information was required to be kept and maintained," then (2) "make a subjective showing that the respondent . . . not only has failed to promptly produce the requested information, but further that the failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records,

or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Id. at 1382-83.

Within this statutory framework, the Court determines whether Commerce properly resorted to adverse facts available with respect to Yantai Timken's ISEs, rebates and commissions.

### 1) Indirect Selling Expenses

Plaintiffs take issue with Commerce's application of partial adverse facts available with respect to Yantai Timken's ISEs. Specifically, Plaintiffs complain that Commerce violated its obligation to calculate the most accurate dumping margin possible by using a figure for ISEs that includes manufacturing expenses.

It is true that Commerce has an obligation to calculate the most accurate dumping margin possible even when applying adverse facts available. See Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1340 (Fed. Cir. 2002)(citing F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000)(noting that "[i]t is clear ... that [Congress] intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance")).

Plaintiffs' argument, however, fails to recognize that Commerce would be in violation of its obligation to calculate accurate dumping margins if it were to use unverified information in its calculations as Plaintiffs suggest. Moreover, Commerce would be in

violation of section 1677m(i) requiring Commerce to verify all information upon which it relies.  Rather, as discussed above, the antidumping statute specifically sets forth the requirements that compel Commerce to resort to facts available.  Also, as noted above, the antidumping statute provides that Commerce may apply adverse inferences to the facts available upon determination that the respondent did not cooperate to the best of its ability.  Indeed, courts have noted that "[w]here a party has not cooperated, Commerce . . . may employ adverse inferences about the information to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."  E.g. Nippon Steel, 337 F.3d at 1381 (citing Uruguay Round Agreements Act, Pub.L. No. 103-465, 108 Stat. 4809 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4198-99).

In the instant matter, the Court finds that Commerce properly resorted to facts available with respect to Yantai's ISEs.  The record evidence demonstrates that Yantai withheld information, failed to provide information requested by Commerce, significantly impeded the proceeding and provided unverifiable information.  As discussed in detail above, the record indicates that Yantai Timken failed to:  (1) include certain expenses in its reported indirect selling expenses; (2) identify the ratios used to allocate expenses amongst the various divisions; and (3) timely provide complete cost center information.

The Court further finds that Commerce's application of adverse inference to the facts available was reasonable. The record demonstrates that Plaintiffs did not cooperate to the best of their ability or do the maximum they are able to do. In the verification outline, Commerce informed Yantai of its obligation to account for the total value of each expense and to trace each expense to both the audited financial statements and to the proof of payment. See Public Admin. R. Doc. 152. However, Yantai did not provide sub-ledgers and other source documents, other than the cumulative profit and loss statements, to tie the ISEs to financial statements. See Issues & Decision Memo at Comment 7. Plaintiffs do not allege that the source documents that would have enabled Commerce to verify Yantai's reported figures do not exist. Indeed, Plaintiffs' offer to provide documents responsive to Commerce's request made immediately after the issuance of the Preliminary Results evidences Plaintiffs' capacity to timely comply. See Public Admin. R. Doc. 189. Moreover, Plaintiffs do not otherwise offer any justification for failing to provide the information in a timely manner. Nor do the Plaintiffs allege that they were unable to understand the nature of Commerce's request for information, that they were unfamiliar with the verification process or that Commerce's instructions were unclear. Because Plaintiffs failed to provide the requested information without any justification despite their ability to do so, Commerce reasonably concluded that Plaintiffs failed to

cooperate to the best of their ability.

Having determined that Commerce properly resorted to adverse facts available, the Court now turns to the issue of whether Commerce erred in its methodology of calculating the figures for ISEs, rebates and commissions. Commerce has broad discretion in choosing which facts to rely on in applying an adverse inference, but it may not be overly punitive in its selection of facts otherwise available. See, e.g., De Cecco, 216 F.3d at 1032-33. Indeed, the CAFC has "repeatedly held that Commerce's special expertise makes it the 'master' of the antidumping law, entitling its decisions to great deference from the courts." De Cecco, 216 F.3d at 1032.

Section 1677e(b) grants Commerce the discretion to use adverse inferences when relying on information from various "facts otherwise available" sources. See 19 U.S.C. § 1677e(b); 19 C.F.R. § 351.308(c). Commerce has "discretion to choose which sources and facts it will rely on to support an adverse inference when a respondent has been shown to be uncooperative." De Cecco, 216 F.3d at 1032. "Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin." Id. Moreover, "[t]he Court's role is not to determine whether the information chosen was the 'best' actually available. Rather the

Court must affirm the [agency's] choice if supported by substantial evidence on the record and otherwise in accordance with law." Manifattura Emmepi S.p.A. v. United States, 16 CIT 619, 623, 799 F. Supp. 110, 114 (1992).

Here, the record evidence indicates that Yantai's reported figures were based on allocation ratios. See CEP Verification Report at 14. Because Yantai's allocation ratios were not reported and not verified, Commerce had no reliable information on the record upon which to determine if any portion of the total ISEs in the audited financial statement was attributable to manufacturing expenses. See id. Thus, Commerce employed the total ISEs figure from the audited financial statement, which was verified. See Issues & Decision Memo at 23.

The Court finds Commerce's methodology reasonable and supported by substantial evidence. Plaintiffs' alternative, to add the expenses Yantai failed to report, is untenable, as it would require Commerce to employ figures that failed verification. As such, the Court finds that Commerce's determination is supported by the record and is otherwise in accordance with law. The Court accordingly sustains Commerce's determination to apply, as partial adverse facts available, the total ISEs figure from Timken's audited financial statements.

### 2) Rebates and Commissions

Plaintiffs also take issue with Commerce's decision to "apply

the highest amount of rebate or commissions that could have been incurred for each U.S. sale based upon Yantai Timken's rebates and commissions agreements with its customers and sales agents." Issues & Decision Memo at 29.  Specifically, Plaintiffs argue that the record is "consistent and unchallenged" in that rebates and commissions were paid only in the context of aftermarket sales and contend that Commerce erred by applying the rebates and commissions to all sales including OEM sales.  Pls.' Mem. at 39.

As discussed in detail above, the antidumping statute requires Commerce to resort to facts available if a respondent fails to provide requested information or provides information that cannot be verified.  Commerce may employ adverse inferences to the facts available if the respondent failed to cooperate by not acting to the best of its ability.

The Court finds that Commerce's determination to resort to facts available is substantially supported by record evidence.  The record indicates that Yantai supplied information regarding rebates and commissions that could not be verified and further failed to provide source documents requested by Commerce.  Yantai reported that it granted rebates and paid commissions on U.S. sales, but could not demonstrate to Commerce the amounts or the recipients of those rebates and commissions.  See Issues & Decision Memo at 27-29.

Commerce provided detailed instructions to Yantai regarding the documents it required to complete verification.  See Public Admin.

R. Doc. 152.  In a letter to Yantai, Commerce advised that it must provide "complete supporting documentation for each pre-selected sales transaction and each verification procedure" and that "[c]omplete supporting documentation would consist of a complete trail of calculations, supporting schedules, selected invoices and copies of pages from sub-ledgers tracing the reported per unit cost back to the general ledger accounts and source documents." Id. The verification outline additionally provided a summary of required source documents. See id. Yet Yantai failed to provide responsive documents to "tie the total annual amount of commissions and rebate payments to its audited financial statements, and could not demonstrate the total value of commissions and rebates paid to each of its customers or sales agents."  Issues & Decision Memo at 28.

Indeed, Commerce could not verify any of the sales traces. "For sales involving rebates and commissions, Timken provided the 'Service Agreement' signed between Timken and the sales agent, but Timken did not provide primary source documents as evidence of its commission payments." CEP Verification Report at 18. With respect to one sales trace, Commerce states "[a]lthough the Section C response reported that [Timken] also paid a [certain percentage] rebate to this customer, Timken claimed at verification that [the customer] did not meet the requirements to earn [that rebate]." Id. at 20. In addition, "Timken's Section C response reported that it also paid [a certain percentage] of net sales as commission to the

sales agent.  Id.  Timken provided the service agreement signed by both Timken and the sales agent, but at verification, Timken claimed that because the sales agent's customer returned a significant number of products, the sales agent did not earn any commission [in the relevant period]."  Id.  Yantai submitted worksheets to Commerce officials during verification, but those worksheets could not be tied to internal accounting documents.  See id.  Commerce thus concluded that Yantai's claims were not substantiated.  See id.

Examining another sales trace, Commerce states with respect to a rebate paid to a customer that "although Timken claimed that this rebate covered sales of subject merchandise sold during [the relevant time period], it did not provide any documentation supporting the sales that the rebate covered.  In fact, the only document Timken provided for this rebate trace was a cancelled check, with a hand-written note indicating that the check applied to [this customer's] rebates for [the relevant time period]."  CEP Verification Report at 19.  Based on the foregoing, the Court finds Commerce's determination that Yantai failed verification of its reported rebates and commissions reasonable and supported by substantial evidence.

Commerce's finding that Yantai had not acted to the best of its ability is reasonable and supported by substantial evidence.  Commerce requested "general ledger, or sub-ledger accounts for accounts receivable or rebate expense for all rebates paid to

relevant customers in order to demonstrate that rebates and commissions were not paid to the sales agents and customers that Timken now claims were not entitled to a rebate." Id. at 22. Plaintiffs did not provide those documents. See id. Plaintiffs do not allege that they did not possess the requested documents. Indeed, shortly after Commerce issued the Preliminary Results, Plaintiffs "offered to submit corrections to remove its over-reporting of rebates and commissions along with documentation confirming that there were no unreported rebates or commissions." Pls.' Mem. at 18. Worksheets provided by Yantai purporting to show that it made no payments were not tied to internal accounting documents. See CEP Verification Report at 22. The record further indicates that Yantai did not propose any other means for Commerce to verify its rebates and commissions. See Issues & Decision Memo at 28; CEP Verification Report at 20.

Commerce therefore reasonably determined that Yantai failed to cooperate to the best of its ability. The Court finds substantial support in the record evidence that Plaintiffs failed "to put forth its maximum efforts to investigate and obtain the requested information from its records," Nippon Steel, 337 F.3d at 1382-83, and that their behavior fell below the standard for a "reasonable respondent." The Court, therefore, sustains Commerce's determination to apply, as adverse facts available, the highest of the reported commission and rebate rates to all U.S. sales.

Plaintiffs assert that Commerce's normal practice is to accept estimated figures if the inaccuracy works against the respondent's interest.  However, the record supports Commerce's finding that it could not determine whether Yantai's reported figure was a conservative estimate.  See Issues & Decision Memo at 28.  The Court has also considered Plaintiffs' arguments that Commerce violated its obligation to calculate accurate margins and that the resulting margin is punitive.  Plaintiffs, however, presuppose that the information they rely on is accurate.  Because Commerce cannot rely on unverified information, the Court is satisfied that the dumping margin calculated by Commerce is as accurate as possible and not punitive.

## CONCLUSION

For the reasons discussed above, the Court finds that Commerce's Final Results are supported by substantial evidence in accordance with law.  Accordingly, the Court denies Plaintiffs' Motion for Judgment Upon the Agency Record.  This matter is dismissed.

> /s/ Nicholas Tsoucalas
> **NICHOLAS TSOUCALAS**
> **SENIOR JUDGE**

Dated:    October 22, 2007
          New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

Before:  Nicholas Tsoucalas, Senior Judge
_____
                                                :
YANTAI TIMKEN CO., LTD. and THE    :
TIMKEN COMPANY,                           :
                                                :
          Plaintiffs,                          :
                                                : Court No.:  06-00020
          v.                                   :
                                                :
UNITED STATES OF AMERICA,          :
                                                :
          Defendant,                         :
                                                :
          and                                  :
                                                :
PEER BEARING COMPANY,               :
                                                :
          Defendant-Intervenor.         :
_____:


**JUDGMENT**

     This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

     **ORDERED** that the final determination of the United States Department of Commerce, International Trade Administration, entitled <u>Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China</u>, 71 Fed. Reg. 2,517 (Jan. 17, 2006), <u>as amended</u> 71 Fed. Reg. 9,521 (Feb. 24, 2006), is affirmed; and it is further

     **ORDERED** Plaintiffs' motion pursuant to USCIT R. 56.2 is denied; and it is further

     **ORDERED** that this case is dismissed.

Dated:     October 22, 2007
           New York, New York


                                     __/s/ Nicholas Tsoucalas____
                                        **NICHOLAS TSOUCALAS**
                                           **SENIOR JUDGE**